## MARION COUNTY vs. MOFFETT, Adm'r. of SAMUELS.

1. The failure of the county court to take a mortgage in fee, on real estate, free from all liens and incumbrances, to secure the payment of school money loaned, as required by the act for the organization and support of common schools, does not discharge the surety.

2. The doctrine that laches is not imputable to the government, is founded on considerations of public policy. The State can only act through her officers, and her transactions are so multiplied, and her agencies so numerous, that great losses would result from maintaining that she is liable for the laches of those to whom she is compelled to entrust the management of her pecuniary concerns.

H. S. LIPSCOMB & A. W. RUSH, Attorneys, for plaintiff in error.

The court below erred in the instructions given. The statute requires that the officers of the county, to-wit, the county court, take, in addition to personal security, a mortgage in fee from the principle on real estate, free from all liens and incumbrances, of double the value of the loan, if the loan be more than $100. See "act for the organization &c. of common schools," 2 Art. 11 section session acts 38, 39 page 118,

The county court did not take mortgage of real estate free from liens and incumbrances, and their failure to do so, releases the securities, Samuels & Beebee: 1 Story's Equity section 325.

The securities had a right to look to the provisions of the statute mentioned, and to calculate their liability on the presumption that the duties enjoined on the county court would be faithfully and punctually performed and if so, that they, in any event, would be secure from loss: See 7 Johnson's Reports 333, People vs. Janson.

When there is a legal liability on the creditor to do an act which would protect the security from loss and he fails to do it, the security is discharged: Ibid.

Even if it be true, as contended, that the intention of the legislature in requiring mortgage or real estate free from liens &c., was to secure the debt and not to protect the security, this does not prevent the application of the principles for which we contend. It is sufficient for our cause, that the effect of such a mortgage is, protection to the securities. But the 16 and 24 sections of the 2d article of the statute above mentioned, pages 118 & 19 show, that the legislature not only intended to secure the debt but to protect the securities. The form of the mortgage, itself, as specified in the 16 section indicates such intention. The 24 section shows clearly an intention to guard and shield the securities, for by it provision is made for the sale of the mortgage premises without suit, or notice to the party, but by order of the county court; whereas, a different remedy is given against the securities. In this, the law makers evidently intended to protect the securities.

A. W. LAMB, for respondent.

The circuit court did right in giving the instruction asked by the defendant in error:

1. Because the law regulating common schools and school monies, is merely directory in its requirements and does not render void contracts for the loan of money, which are not in strict conformity to its provisions: See school law 1845 pages 12 and 13, sections 10, 11, 12, 13, 15, 16.

2. Because the securities directed by this law to be taken by the county court, loaning

school monies, were intended solely for the protection of the school fund and not for the protection of the different securities required to be taken.

3. Because the requirements of the school law form no part of the contract with the securities.

4. Because a failure on the part of the county court to discharge its duty will not release the securities: See 2 Pirtle's Digest page 428, section 17; 9 Wheaton 720; United States vs. Kirkpatrick; 11 Wheaton 184, United States vs. Vanzandt. The case of the People vs. Janson, in 7 Johnson's Reports is especially overruled in the case referred to in 9 Wheaton.

It will be seen, by reference to the 11th section of the school law before referred to, that the land upon which the mortgage is to be given, must not only be free from all incumbrances and liens, but it must be double the value of the loan and must lie in the county where the loan is made. Now, it certainly will not be contended, that the mortgage would be void if all or a part of the land should happen on a correct survey to be in an adjoining county, nor that because the mortgaged property should fall a little short of double the value of the amount of money loaned. In either case, the mortgage would be good as a common law obligation, and the courts would enforce it accordingly. If this proposition be correct, then the law must, as before contended, be directory, and not mandatory in its operation.

The court did right in finding a verdict for the plaintiff upon all the facts of the case, and as the case was submitted to the court sitting as a jury, its verdict will not be disturbed, unless found to be palpably against the evidence; and as it does not appear from the bill of exceptions, but that other testimony was given than that recited, the verdict will be permitted to stand.

SCOTT, J., delivered the opinion of the court.

This was an action begun in the county court of Marion county by the defendant in error against the plaintiff in error, for the recovery of a debt due the defendant in error for school money loaned to E. McDonald, for whom the intestate of the plaintiff in error was a surety. Judgment was recovered in the county court, whence the case was transferred to the circuit court, where judgment was again rendered for the defendant in error, upon which the plaintiff in error sued out this writ.

It appears, that Jameson Samuels, the intestate, together with W. B. Bebee was surety in a bond for $1200, executed by E. McDonald to the county of Marion for school money. The bond was executed on the 19th day of January, 1842, and was secured by a mortgage on a tract of land to which McDonald was entitled but to one undivided half, and which had been previously conveyed by him in 1840, in trust, to pay his debts, and which afterwards, in November 1842, was sold under the trust. The court instructed the jury, that the fact, that McDonald had not a clear and perfect title to the land mortgaged to secure the debt, did not discharge the surety; to which instruction the plaintiff in error excepted, and now maintains its impropriety as a reason for reversing the judgment of the court below.

The 11 section of the 2 article of the act to provide for the organiza-

39

tion and support of common schools, passed February 9th, 1839, enacts, that if the sum to be loaned exceed one hundred dollars, the court shall require in addition to bond and personal security, a mortgage in fee, on real estate, free from all liens and encumbrances within the county, equal in value to double the amount of the loan.

The school lands were vested in the State, in trust for the benefit of the inhabitants of the township in which they are respectively situated. The State vested in the county courts the management of this trust. Those courts are the agents of the State for this purpose. The principle, that the State is not affected by the laches of her agents, was sanctioned by this court in the case of Park vs. State, 7 Mo. Rep.

The doctrine, that laches is not imputable to the government, is founded on considerations of policy. The State can only act through her officers, and her transactions are so multiplied and her agencies so numerous, that great losses must result from maintaining that she is liable for the laches of those to whom she is compelled to entrust the management of her pecuniary concerns. The provisions of the law above cited, were intended only for the regulation of the conduct of the officers to whom was confided the care of the school monies, and to secure those monies from loss. They are merely directory and form no part of the contract with the surety. The surety has the same means of forming a judgment of the fidelity of the public agents as the State, and if he reposes confidence in them and is deceived, he cannot expect that the consequences of their neglect shall be visited on the State. The case of the People vs. Johnson, 7 J. R., relied on by the plaintiff in error, has been overruled.

The other Judges concurring, the judgment will be affirmed,